**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENNETH MALIK MILLER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID DIGUGLIELMO, et al.** | : | **NO. 07-2686** |

**MEMORANDUM**

**Baylson, J.**                                                        **February 4, 2010**

Presently before the Court is a Motion for Reconsideration of the Court's November 10, 2010 ruling, filed by Defendants William Radle and Thomas Dohman on December 7, 2010 (ECF No. 106).  Defendants request the Court (1) conclude the facts are undisputed that Plaintiff's ring was contraband and that Plaintiff cannot have any property rights to contraband held while in prison, and (2) hold that Defendants are entitled to qualified immunity as applied to Plaintiff's due process claim.  Plaintiff responded to the motion on December 14, 2010 (ECF No. 106).  In light of Defendants' Motion, the Court has decided to take a fresh look at the record on the issue of contraband and to revisit the issue of qualified immunity.  For the reasons which follow, Plaintiff's Motion will be denied.

**I.      Summary Background and Procedural History[1]**

**A.      Plaintiff's Possession of His Wedding Ring**

Plaintiff has been incarcerated since 1987.  Pl.'s Dep. at 10:2-14.  He was initially held at

---

[1]The procedural and factual background in this case are set forth in two prior opinions and will not be repeated in full here.  See Memorandum and Order, Dec. 15, 2009 (not reported) (ECF No. 75); Memorandum and Order, Nov. 30, 2010 (not reported) (ECF No. 104),

the State Correctional Institute at Graterford ("SCI Graterford") in 1987 and returned there between 2000 and 2007.  Id.  In 1992, while Plaintiff was at Western Penitentiary ("SCI Pittsburgh"), Plaintiff's family gave him a wedding ring as a gift.  Id. at 49:13-25, 50:1-2, 52:5-12.  According to Plaintiff's testimony, Plaintiff's family sent the ring to him through the "Chaplain Department," which dealt with "religious artifacts" such as wedding bands at that time.  Id. at 50:3-5.  The ring remained with Plaintiff when he was transferred to SCI Graterford in 2000.  Id. at 52:5-7.  Although Plaintiff testified that prison officials sometimes questioned him about the ring, informing him that he might have to eventually send the ring home, Plaintiff retained possession of the ring until May 28, 2006.  Id. at 52:5 to 53:5.

According to Plaintiff's deposition, Dombrosky, Defendant Ronald Quick, and one other officer at Graterford had searched Plaintiff's cell prior to May 28, 2006, without seizing the ring.  Pl.'s Dep. at 60:12 to 61:1.  Plaintiff stated specifically that "Quick [had] been in [his] cell a number of times.  He [had] seen [the] ring . . . and he told [Plaintiff] in the past, too, that they [were] going to make [Plaintiff] send it home[,]" but had let Plaintiff keep the ring.  Id.  Dombrosky testified in his deposition that he did not "believe" that he had ever seen the ring prior to the 2006 cell search and would have confiscated it prior, had he seen it.  Dombrosky Dep. at 29:52-7.  The record does not contain a deposition or any factual statement from Quick.

On May 28, 2006,  Dombrosky and Quick searched Plaintiff's cell, acting as a search team conducting random cell searches.  Dombrosky Dep. at 26; Radle Dep. at 20:1 to 22:11.   On that date, Dombrosky confiscated, among other items, Plaintiff's wedding ring, described on the Confiscated Items Receipt as a "silver tone ring with large stones."  Pl.'s Dep. at 47:8-9, 47:19-20; 52:5-7; Dombrosky Dep. at 28:1-29:24; Ex. G.  At the time of the search, Plaintiff was not

wearing the ring, but had it in his cell, possibly in a drawer.  Pl.'s Dep. at 68.  At the outset of the

search, Dombrosky asked Plaintiff if he possessed any contraband and Plaintiff stated that he did

not.  Dombrosky Dep. at 28:1-6; Pl.'s Dep. at 46:23 to 47:19.  Plaintiff pled not guilty to the

subsequent misconduct charge for possession of contraband.  Pl.'s Ex. B at P-2; Pl.'s Ex. C at D-

3.[2]

### B.     Seizure of Plaintiff's Wedding Ring and Grievances Filed by Plaintiff

Following a May 31, 2006 misconduct hearing, Hearing Officer Mary Canino charged

Plaintiff with possession of "contraband," reduced the charge against Plaintiff "due to positive

attitude," ordered "contraband" be "revoke[d]," and informed Plaintiff that the Internal Security

Department ("ISD") would allow Plaintiff to send the ring home.  Pl.'s Dep. at 58-59; Pl.'s Ex. B

at P-2.  The record contains no further evidence that the ring was sent to Plaintiff's home or, if

not, why it was not.

On June 2, 2006, Plaintiff filed Grievance No. 154118 against Dombrosky regarding the

cell search and accused him of harassment.   Pl.'s Dep. at 59:11 to 62:9; Pl.'s Ex. C at D4, pp.

1-2.  The grievance was assigned to Radle, who responded in writing on June 7, 2006, that the

ring was contraband but Plaintiff had been "allowed to send that item home."  Pl.'s Ex. C at D-4,

p. 3.

On October 13, 2006, after Plaintiff received the grievance response, Radle informed Plaintiff

verbally that his wedding ring was missing.  Pl.'s Dep. at 68:12-21; Radle Dep. at 18:17 to

19:14; Pl.'s Ex. C at D5, p.3.  Radle instructed Plaintiff that he could seek reimbursement for the

---

[2] The misconduct also charged Plaintiff with possession of "scented oil" and photographs
depicting Plaintiff with prison employees.  Dombrosky Dep. at 35-36, Defs.' Ex. 6 at P1.

ring with proof of ownership or a receipt, or bring a criminal complaint regarding its disappearance.  Id.  The record contains no other facts pertaining to any dates or occurrences regarding the ring's disappearance.

On October 28, 2006, Plaintiff filed Grievance No. 168480 about the loss of his ring, requesting reimbursement and indicating his intention to bring civil and criminal actions against Dombrosky.  Pl.'s Dep. at 66:8-67:22; Pl.'s Ex. C at D5.   On November 14, 2006, Radle submitted a written response which stated, "I have informed you several times to obtain a copy of the receipt for your ring that was confiscated and we will proceed from that point. I cannot proceed until you provide a copy of a receipt for the property."  Radle Dep. at 35-36, 39-40; Pl.'s Ex. C at D-4, D-5.  Plaintiff filed no appeal to this response, Pl.'s Dep. at 73:1 to 75:20, but, instead, provided to ISD an appraisal sent to him by his sister, valuing a white gold ring containing diamonds at $3000.  Pl.'s Dep. at 76:3-76:21; Pl.'s Ex. C at D6; Pl.'s Ex. B at P4.  Around this time, Dohman located a ring believed to be Plaintiff's in the Misconduct Hearing Room.  Dohman Dep. at 44-45.  Dohman testified in his deposition that he "believed" this to have occurred prior to receipt of Plaintiff's appraisal.  Id. at 44:12-22.

Dohman took the ring off prison grounds and brought it to Chiccarine's Jewelers in Collegeville, Pennsylvania, for an independent appraisal.  Dohman Dep. 47:2-11.  Dohman's deposition states that he believed Plaintiff was "trying to get a ... false amount for an appraisal on his ring" and that Dohman intended to "include that in a charge for misconduct [he] was preparing to write at some point in time."  Id. at 47:16-19; 48:20 to 49:6.   He testified that he did not file any paperwork in taking the ring off prison grounds, although he "believe[s]" he told Deputy Michael Lorenzo that he was planning to take the ring for appraisal.  Id.  According to

-4-

Dohman, he was allowed to take "confiscated items out of the prison . . . unless [the items were] a crime against the crime code, like drugs, weapons, cell phones, things that the Pennsylvania State Police would be able to charge criminally for[, which would require] a chain of custody." Dohman Dep. 47:20 to 48:3.

The Court's November 30, 2010 Memorandum relates an exchange between Plaintiff and Radle and Dohman regarding the ring that occurred during a December 20, 2006 interview with Plaintiff. November 30, 2011 Memorandum, at *7-10. Dohman stated early in the interview that Plaintiff's "ring problem I believe is resolved." Pl.'s Ex. C at D-10, p. 2.

> Dohman [later] informed Plaintiff that he had found Plaintiff's ring. Pl.'s Ex. C at D-10, p. 4. He also told Plaintiff that the Collegeville jeweler had told Defendant that the ring was sterling silver set with cubic zirconias worth $50 "at a flea market on a good day." Dohman Dep. at 50:8-13; Pl.'s Ex. C at D10, pp. 5-6.[3] Plaintiff disclosed to Defendants that (1) his family obtained the ring from a dealer; (2) his family did not have a receipt, but could bring the dealer forward to testify; and (3) his family had procured the appraisal for insurance purposes. Pl.'s Dep. at 118:11-15; Pl.'s Ex. C at D10, pp. 18-19. Dohman stated to Plaintiff that he would "talk to the Deputy about mailing [Plaintiff's] ring out, especially based on the fact that [Plaintiff] had a three thousand dollar appraisal .... we'll see what he has to say about mailing that out." Pl.'s Ex. C at D10, p. 19. At the interview's conclusion, Dohman reiterated that "we'll arrange for the ring and ... we'll go from there." Pl.'s Ex. C at D10, p. 22.

Dohman later brought a charge of insurance fraud against Plaintiff for inflating the ring's value, as one of several misconduct charges against Plaintiff. Id. at *6. On January 5, 2007, Hearing

---

[3] At his oral deposition, Dohman produced a copy of a written appraisal conducted by Ciccarine's Fine Jewelry, for a "Gentleman's Silver and Cubic Zirconia Ring" with a replacement cost of $75. Dohman Dep. at 101:4-105:24; Pl.'s Ex. B at P13. The document is dated October 12, 2007. Id. Dohman admitted in his deposition testimony that he had not obtained a written appraisal prior to the misconduct issued against Plaintiff for insurance fraud, had based his initial judgment regarding the validity of Plaintiff's appraisal on the oral evaluation performed by the jeweler, and only requested the written estimate after this suit was filed. Id.

Officer Canino found Plaintiff guilty of all charges and sentenced him to 360 days in the Restricted Housing Unit.  Id.  On September 25, 2007, Plaintiff was transferred from SCI Graterford to SCI Huntingdon.  Pl. Dep. at 9; Moyer Dep. at 43, 49.

At a December 9, 2009 hearing, see portion of argument referenced below at Section IV(A), pp. 10-11, the Court suggested a procedure to attempt to determine whether the ring Defendants asserted was Plaintiff's ring was, in fact, Plaintiff's ring.  See Transcript of December 9, 2009 hearing, pp. 63-67; ECF No. 79.  The procedure was unsuccessful.

According to statements submitted in connection with Defendants' first summary judgment motion, but not supported by sworn affidavits or declarations by any party, prison officials sent the ring to SCI Huntingdon in January 2010, where Plaintiff is currently incarcerated, for Plaintiff's examination.  Pl's Suppl. Counter Statement of Facts ¶ 109.  Plaintiff stated upon examination that the ring shown to him was not his, but a "duplicate."  Id.  "[B]ased on communications not part of this record," Defendants admit that Plaintiff stated the ring was not his.  Defs.' Reply to Pl.'s Suppl. Counterst. of Facts ¶ 109.  Defendants do not admit to the fact asserted by Plaintiff that he claimed the ring shown to him to be a "duplicate."  Id.; Pl.'s Suppl. Counterst. of Facts ¶ 109.  After a colloquy at subsequent hearing on Defendants' second summary judgment motion regarding Plaintiff's assertion that the ring was a duplicate, Defendants conceded, for the purpose of the summary judgment motion, that the ring remains lost.  Transcript of August 11, 2010 hearing, pp. 8:4-12; 10:7-21 (ECF No. 99).

## II.    Parties' Contentions

Defendants contend on Motion for Reconsideration that the Court failed to properly consider the issue of the contraband status of Plaintiff's wedding ring.  Defs.' Mot. for Reconsid.

at 2. Defendants aver that it is undisputed that Plaintiff's ring was contraband. Id. Arguing that a prisoner cannot maintain a protected property interest in contraband, Defendants imply that Plaintiff had no associated due process rights or, if the Court so held, this would not be considered clearly established law for the purpose of a defense of qualified immunity. Id. at 2-3.

Defendants further contend that the Court erred in relying on cases addressing the "availability" of grievance procedures under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(e), to find Plaintiff's post-deprivation remedy "unavailable." Id. at 3-5. In doing so, Defendants aver that the Court declared two new rules of law, (1) a new rule declaring interference with grievance procedures can be a due process violation and (2) a new rule applying the availability standard from PLRA exhaustion cases to the due process context. Id. at 4. Defendants argue that they are entitled to qualified immunity because their actions were not violations of clearly established law. Id.

Finally, Defendants contend that no disputed issues of fact exist and, thus, the Court should have decided qualified immunity as a matter of law. Id. at 5-7. If disputed issues of fact remain, Defendants aver that the Court failed to properly identify them in accordance with Forbes v. Township of Lower Merion, 313 F.3d 144 (3d Cir. 2002).[4] Id. at 7.

Plaintiff responds that the issue as to whether Plaintiff has a protected property interest in his ring has been previously raised and rejected by this Court in its November 20, 2010 Memorandum, ruling on Defendants' Second Motion for Summary Judgment. Pl.'s Resp. at 3. Plaintiff argues further that Defendants have previously acknowledged Plaintiff's ownership right

---

[4] In Forbes, the Third Circuit announced a supervisory rule requiring that, where a party pleads qualified immunity, District Courts must "specify those material facts that are and are not subject to genuine dispute and explain their materiality." 313 F.3d at 146.

and interest in his ring, based on their repeated acknowledgments that Plaintiff should be allowed

to send the ring home.  Id. at 4-5.  As to qualified immunity, Plaintiff avers that a reasonable

official in Radle and Dohman's shoes would have known that telling an inmate that he can send

his property to his family, and then interfering with the inmate's ability to do so, is a violation of

a due process right.  Id. at 4-5.  Finally, Plaintiff posits that this Court's ruling would not "open

the floodgates" to due process challenges to confiscation of contraband.  Rather, the Court's

ruling is limited to situations in which prison officials "acknowledge a property interest and

make representations regarding protections afforded to that interest."  Id. at 5.

## III.    Legal Standards

Summary judgment is appropriate if the movant can show "that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).[5]  An dispute is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under

---

[5]  Amendments to the Federal Rules Of Civil Procedure became effective on December 1, 2010.  The oft-cited summary judgment standard formerly found in Rule 56(c) is now located in Rule 56(a), with one alteration: the substitution of the word "dispute" for "issue," which the Rules Advisory Committee explained better describes the summary judgment inquiry, but does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 56 Advisory Committee's Note.

Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order, the amended rule will govern all proceedings commenced on or after December 1, 2010, and all proceedings then pending, "insofar as just and practicable."  United States Courts, Rules and Procedures, Rules and Forms Amendments Effective 12/1/10 (Jan. 11, 2011, 1:36 PM), http://www.uscourts.gov/Rule sAndPolicies/FederalRulemaking/Overview/RulesForms120110. aspx.  Thus, when necessary, the Court quotes to the amended rule.

governing law.  Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  Parties seeking reconsideration must show at least one of the following grounds: (1) an intervening change in controlling law, (2) the availability of new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id.  Parties may not use a  motion for reconsideration to "request that a court rethink a decision already made." In re Blood Reagents Antitrust Litigation, 2010 WL 5097796, at *1 (E.D. Pa. Dec. 14, 2010).  "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Corp. v. Diversified Indus., Inc., 884 F. Supp 937, 943 (E.D. Pa. 1995).

IV.     Discussion

    A.     A Genuine Issue of Material Fact Exists as to Whether Plaintiff's Ring is
           Contraband.

Defendants insist the fact is undisputed as to whether Plaintiff's wedding ring is "contraband."  Defendants contend that given the ring's contraband status, Plaintiff had no property right to the ring and, thus, Plaintiff has no due process rights associated with the ring. Defendants contend Plaintiff cannot now argue Defendants denied his access to a post-deprivation remedy because he was in possession of contraband and, therefore, was never entitled to such a remedy.  However, Defendants have not cited and the Court has not found any statute or DOC regulation or policy conclusively establishing Plaintiff's ring as contraband. Further, the Court finds the conduct of prison officials regarding Plaintiff's ring to have been inconsistent with treatment of contraband.  Thus, the Court finds the issue of contraband to raise a genuine dispute of material fact.

Defendants raised the ring's status as contraband at the Court's December 8, 2009 hearing on Defendant's first summary judgment motion (ECF No. 79).  The Court engaged in the following colloquy on this issue during argument on Plaintiff's retaliation claim

> [Defendants' Counsel]: . . . . the thing that triggered a problem with the ring was not him complaining about the ring.  It was the appraisal that he turned in saying that he's walking around a maximum security prison with a $3,000 ring.
>
> Court:  What about - -
>
> [Defendants' Counsel]: And he still wants $3,000 from the prison.
>
> Court: Are you still arguing that the ring was contraband, and was subject to confiscation?
>
> [Defendants' Counsel]: Yes, it was contraband, that's undisputed.  And Mr. Miller knew that he'd been walking around with contraband.
>
> Court: But of course the prison let him walk around with it for a long time.

[Defendants' Counsel]: Not the defendants here. They didn't know about it.

Transcript of December 8, 2009 hearing, pp. 20-21.

The parties returned to discussion of the ring's contraband status in argument on

Dohman's actions taking the ring out of prison property to be appraised.

[Defendants' Counsel]: . . . . I believe the record shows [Dohman] took [the ring] to the jeweler nearby the prison, being that there's not a jeweler on site at the prison.

Court: Did Miller authorize that?

[Defendants' Counsel]: No, there's not evidence that he did.

Court: Has he objected -

[Defendants' Counsel]: He has no protected interest in contraband. It's unquestioned - it's not disputed that the ring was contraband -

Court: Well, how long did Mr. Miller have the ring before it was taken away?
. . . . Did he ever have it in his possession?
. . . .
[Plaintiff's Counsel]: [H]e had the ring in his possession in 1992. It was a wedding ring, it was a gift from his family. It was sent to the institution. The ring was then, as I said, taken away in May of 2006. So he had it in his possession during that whole period of time.

Id. at 27-28.

"[S]tandard analysis under [the Due Process Clause] proceeds in two steps: We first ask

whether there exists a liberty or property interest of which a person has been deprived, and if so

we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout

v. Cooke, No. 10-533, 2011 WL 197627, at *2 (Jan. 24, 2011) (citing Kentucky Dept. of

Corrections v. Thompson, 490 U.S. 454, 460 (1989)). "In procedural due process claims, the

deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is

not in itself unconstitutional; what is unconstitutional is the deprivation of such interest without due process of law."  Burns v. PA Dept. of Correction, 544 F.3d 279, 283 -284 (3d Cir. 2008) (quoting Zinermon v. Burch, 494 U.S. 113, 125, (1990)).

### 1.      Definition of Contraband and Contraband Per Se

The Court agrees that if Plaintiff's ring were clearly contraband, Plaintiff would have no property right and, thus, no right to a post-deprivation remedy.  Black's Law Dictionary defines contraband as "1. Illegal or prohibited trade; smuggling. 2. Goods that are unlawful to import, export, or possess."  Black's Law Dictionary 340 (8th Ed. 2004).  An item defined as contraband per se is one that is "unlawful to possess regardless of how it is used."  Id.; compare Cooper v. City of Greenwood, 904 F.2d 302, 304 (5th Cir. 1990) ("Contraband per se consists of objects which are 'intrinsically illegal in character,' 'the possession of which, without more, constitutes a crime.'") (quoting One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699-700 (1965)) with U.S. v. Baird, 63 F.3d 1213, 1226  (3d Cir. 1995) ("Derivative contraband has been defined as articles which are not inherently illegal, but are used in an unlawful manner.").

### 2.      No Due Process Rights Associated with Contraband Per Se

As one has no "property right in that which is not subject to legal possession[,]" a person has no inherent property rights in an item classified as contraband per se.  Helton v. Hunt, 330 F.3d 242, 247-48 (4th Cir. 2003); see Cooper, 904 F.2d at 305 (holding for purpose of Section 1983 claim that contraband items seized pursuant to a criminal proceeding are subject to forfeiture without due process).  Without a property or liberty interest, an individual may make

no claim of a deprivation of due process.  See Culinary Service of Delaware Valley, Inc. v. Borough of Yardley, Pa., 385 Fed. App'x 135, 146 (3d Cir. 2010) (affirming the dismissal of plaintiff's due process claim because plaintiff did not assert a "protected interest" in the ability to run a business).

Thus, at least one Circuit Court of Appeals has recognized that a prisoner is not entitled to a post-deprivation remedy for the confiscation of items clearly defined to be contraband per se. See Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984) (per curiam) ("Because the property [belonging to another inmate] was contraband, [the inmate] cannot seriously argue that he had a protected property interest in it."); c.f. Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006) ("The requirement . . . of a predeprivation hearing is relevant only if an inmate first demonstrates that he has a protected property interest, . . . and here we conclude that [plaintiff] had no property right protected by the Fourteenth Amendment to receive a contraband money order while in prison.") (internal citation omitted); but see Monroe v. Beard,  536 F.3d 198 (3d Cir. 2008) (examining the sufficiency of due process provided to prisoner-plaintiffs, after confiscation of "presumptively contraband" Uniform Commercial Code ("UCC") materials, to determine whether UCC materials were being used for legal purpose).

### 3. No Statute or DOC Policy Clearly Defines Plaintiff's Ring as "Contraband"

Defendants have never cited a prison policy that conclusively establishes Plaintiff's ring to be contraband.   Instead of introducing any relevant DOC policies or regulations into the record, Defendants have relied on deposition testimony regarding the ring's contraband status. For example, Radle testified in his deposition that, while DOC policies allow inmates to retain

their wedding rings in prison, DOC "policy prohibits inmates from having a ring with any type of stones in it," even if that ring is an inmate's wedding ring. Radle Dep. at 26:10-16. While Radle testified that he was not aware of the exact rational behind the policy, he "assume[d it to be] because of the monetary value that could be attached" to a ring with stones, possibly because it would provide an inmate with purchasing power. Id. at 26:23 to 27:1. Dohman testified further that rings with stones have been considered contraband since at least 1984, when he was first employed with the DOC, and that this policy has been consistent throughout the prison system since that time. Dohman Dep. at 43:17 to 44:11. See also Dombrosky Dep. at 29:23 to 29:14; Canino Dep. at 68:1-9. However, Plaintiff testified that, when he received the ring from his family in 1992, no such policy was enforced. Pl.'s Dep. at 49:20 to 50-13. Plaintiff testified that prisoners were allowed to wear street clothes and jewelry and that, when his family sent him his ring, it was sent through the Chaplain Department, which gave approval for Plaintiff to keep the ring in his possession.[6] Pl.'s Dep. at 49:13-25, 50:1-2, 50:3-5, 51:5-9; 52:5 to 53:5.

The notion of what is illegal to possess and, thus, "contraband per se" is broadly defined in the prison context. Section 5123 of the Crimes Code, 18 Pa. C.S.A. § 5123, prevents "the acquisition of contraband substances by persons confined in prisons and mental hospitals" by creating penalties for both prisoners and non-prisoners who introduce contraband into prisons. Com. v. Williams, 579 A.2d 869, 871 (Pa. 1990). Under the statute, contraband includes

_____

[6]Plaintiff's testimony states that the prison administration "always had a standard policy, but they didn't go by it." Pl.'s Dep. at 49:20 to 50-13. However, it is unclear from his testimony whether Plaintiff is referring to a "standard policy" regarding possession of street clothes, jewelry, or wedding rings.

"controlled substances" as defined by the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-102(b).   See 18 Pa. C.S.A. § 5123(a).  In addition, Section 5123 defines as contraband certain items that would not be considered illegal to possess outside of the prison context, such as money provided to prisoners through improper channels; any type of "spirituous or fermented liquor, medicine, or poison . . . without a written permit" signed by the prison physician;" and a wide variety of "telecommunication devices," such as "cellular phones, digital phones and modem equipment devices."  18 Pa. C.S.A. § 5123(b) - (c.1), (e).

A May 25, 2004 Policy Statement[7] on Searches of Inmates and Cells issued by the DOC, but not found in the record, states that 18 Pa. C.S.A. § 5123 and the Department's Inmate Handbook define "contraband."   Commonwealth of Pennsylvania Department of Corrections, DC-ADM 203: Searches of Inmates and Cells 2 (May 25, 2004) available at www.portal.state.pa.us/portal/.../203_ searches_of_inmates_and_cells_pdf.  This Policy Statement describes contraband, consistently with Section 5123, to include "money, implements of escape, non-prescribed drugs, drugs which are prescribed, but which the inmate is not authorized to possess, drug paraphernalia, poisons, intoxicants, materials used for fermentation, property of another, weapons or other items which in the hands of an inmate present a threat to the inmate, others or to the security of the facility."  Id.

Appendix A to DC- ADM 801: Inmate Discipline Policy, which contains the only

---

[7] DOC Policy Statements are "promulgated by the Secretary of Corrections acting under the authority of 71 P.S. § 310-1."  Wheeler v. Beard, No. Civ. A. 03-4826, 2005 WL 1217191, at *4 (E.D. Pa. 2005) (Yohn, J.).

definition of "contraband" found in the record, defines misconduct charges for which a prisoner

may be disciplined.  Pl.'s Ex. I, p. 23, ECF No. 91-14.  Number 36 of Class I Charges (Eligible

for Informal Resolution) is "[p]ossession of contraband" and cites a description of "contraband"

identical to DC-ADM 203.  Id.

DOC Policy Statement DC-ADM 815: Personal Property, State Issued Items, and

Commissary/Outside Purchases further defines contraband "as any item possessed by an inmate

or found within the facility that is prohibited by law or expressly prohibited by those legally

charged with the administration and operation of the facility or program."  Commonwealth of

Pennsylvania Department of Corrections, DC-ADM 815: Personal Property, State Issued Items,

and Commissary/Outside Purchases 3-3 (May 4, 2009) available at http://www.portal.state.pa.us/

portal/server.pt/document/916572/815_personal_property_state_issued_items_and_

commissary_-_outside_purchases_pdf (emphasis added).

The 2009 DOC Inmate Handbook and DC-ADM 815 outline a far more expansive list of

contraband items than contained in Section 5123.  Pennsylvania Department of Corrections,

Inmate Handbook (2009) available at http://www.portal.state.pa.us/portal/server.pt/gateway

PTARGS_0_2_915573_0_0_18/InmateHandbook.pdf; see also DC-ADM 815 3-4.

That list includes "personal property in excess of the allowable limits" and notes that "items such

as televisions, typewriters, radios, jewelry, etc., which are of value must be disposed of in

accordance with established state guidelines and procedures."  Inmate Handbook 27; see also

DC-ADM 815 3-4.  The Handbook states that an inmate with "excessive personal property" may

choose to have items sent home, but prisoners are "not permitted to ship items that are

contraband." DOC Inmate Handbook 5. DC-ADM 815 further states that "[a]ll items deemed to be contraband will be destroyed or otherwise disposed of[, although d]estruction of contraband will ONLY occur after the inmate's misconduct hearing is held and the misconduct appeal process is exhausted. When an inmate files a grievance regarding confiscated contraband, destruction of the property will only occur after the appeal process has been exhausted." Id. at 3-5. Both the Handbook and the version of DC-ADM 815 available on the DOC website post-date the 2006 seizure. Defendants have not introduced earlier versions into the record, nor has this Court found earlier versions on the DOC website.

DC-ADM 815 additionally provides a list of items that "may be retained after being examined and screened thoroughly for contraband" at the time an inmate is committed into a state correctional institution. DC-ADM 815 3-1. Among those items are watches of a "$50.00 maximum value with time, day, and date feature only[;]" rings "[w]edding band only, no gem stones;" and religious medals "no larger than 1 ¼ inches and with a chain no longer than 26 inches and a maximum value of $50, no gem stones." Id.

According to an unpublished opinion, which addressed DC-ADM 815 and a prisoner-plaintiff's First Amendment rights associated with confiscated religions objects, the "1 1/4 inch size limitation [on religious medals] has been included in DOC written policy, in some format, since approximately 1994." Piskanin v. Rendell, No. 06-129J, 2008 WL 4442004, at *3 (W.D. Pa. 2008) (Lenihan, Magistrate J.). In Piskanin, the prison administration confiscated the plaintiff's religious medal when he was committed to SCI Graterford in July 2005 and, again, when the plaintiff's family sent the medal to him upon his transfer to SCI Camp Hill. Id. The

defendants kept the medal, pending resolution of grievances filed by the plaintiff and told him that he could mail the medal home or have it destroyed.  Id.  The plaintiff challenged the prison's confiscation of his medal as "den[ying] him the opportunity to practice his Catholic religion in violation of the First Amendment."  Id. at 4   Magistrate Judge Lenihan held, under Turner v. Safely 482 U.S. 78, 89 (1987), that the size limitation on religious medals was "reasonably related to the prison's legitimate penological interests in promoting institutional security" because jewelry items "can be used as or fashioned into a weapon, or stolen or smuggled within the facility due to perceived value and/or uniqueness."  Id. at 6.

Neither the current policy statement, nor Piskanin reveal whether any policy addressing possession of wedding bands was in effect when Dombrosky confiscated Plaintiff's ring on May 28, 2006.  The revised version of DC-ADM 815 found on the DOC website, with an effective date of May 29, 2009, indicates that this section of the policy statement addressing wedding bands was last revised in November 2009.  DC-ADM 815 3-1.   While this Court can locate decisions addressing DC-ADM 815 from as early as 1992, see e.g., Thompson v. Lehaman, Civ. A. No. 91-1501, 1992 WL 28052, at *1 (E.D. Pa. 1992) (Newcomer, J.); Small v. Horn, 722 A.2d 664, 666 (Pa. 1998) (stating that "[p]rior to 1997, the Department's policy on prisoner clothing was set forth in a Department directive issued in accordance with the Consent Decree, and known as 'DC-ADM 815'"), Piskanin is the only decision containing any reference to a policy on wedding bands.  Further, a restriction on possession of wedding rings to those without gem stones does not conclusively establish a ring with gemstones to be contraband per se.

Defendants have failed to cite any authoritative sources conclusively establishing

-18-

Plaintiff's ring as contraband. Given the lack of specific DOC policies from 2006 in the record, the Court is reluctant to conclusively find Plaintiff's ring to be contraband. Neither Section 5123, nor any of the DOC Policy Statements cited above establish whether the DOC had conclusively declared Plaintiff's ring to be contraband at the time it was confiscated. A wedding ring with stones is not among the several categories of items deemed by the Pennsylvania Legislature to be dangerous enough that their introduction onto prison grounds is a punishable offense. Nor is a ring with gemstones listed among those items described as "contraband" for the purpose of a Class I Charge of misconduct. Further, even if the Court were to rely on 2009 edition of Inmate Handbook or DC-ADM 815, both issued after the ring's seizure and after Plaintiff initiated this suit, neither make clear whether the ring would be considered contraband per se as "personal property in excess of the allowable limits," particularly given that the value of the ring is a disputed issue of fact.

### 4. Conduct of Prison Officials Regarding Plaintiff's Ring not Consistent with Treating Item as Contraband

Even presuming that a prohibition against possession of wedding rings with gemstones existed at the time Plaintiff's ring was confiscated, viewing the facts in the light most favorable to Plaintiff, the conduct of prison officials, including that of Defendants Dombrosky, Quick, Radle, and Dohman, has not been consistent with treatment of contraband. Officials at SCI Pittsburgh allowed Plaintiff to receive the ring into the prison through the DOC Chaplain Department in 1992 and Plaintiff was allowed to maintain possession of the ring for 14 years. Pl.'s Dep. at 49:13-25, 50:1-2, 50:3-5, 51:5-9; 52:5 to 53:5. At no point was the ring confiscated between 1992 and 2006, despite Plaintiff's having been subjected to strip searches, pat downs, and cell

searches. Id. at 52:5-7. Further, Plaintiff's personal items were presumably searched when he

was transferred into SCI Graterford and, yet, the ring remained in Plaintiff's possession. Id.

Plaintiff's deposition testimony states specifically that Dombrosky and Quick searched Plaintiff's

cell on prior occasions and, at the very least, Quick once acknowledged Plaintiff's possession of

the ring and did not confiscate it. Id. at 52:5 to 53:5; 60:12 to 61:1. Plaintiff also testified that

Dombrosky chose the 2006 cell search to confiscate the ring when he had not seen fit to do so

during prior searches, although there is no evidence in the record that Dombrosky had ever seen

the ring prior to its seizure. Id. Even after the ring was seized, Radle, Dohman, and Canino each

represented that Plaintiff would be allowed to send the ring home, see e.g. Pl.'s Dep. at 58-59;

Pl.'s Ex. B at P-2; Radle, Pl.'s Ex. C at D-4, p. 3; Radle Dep. at 18:17-19:14; Pl.'s Ex. C at D5,

p.3; Pl.'s Ex. C at D10, p. 22, actions which are not consistent with the current prohibition on

mailing contraband to an inmate's home. Inmate Handbook 5. Finally, Dohman testified that he

took the ring off prison grounds for an independent appraisal without filing any paperwork in

order to refute Plaintiff's appraisal valuing the ring at $3000. Dohman Dep. at 47:2-19; 48:20 to

49:6. While Dohman asserted in his deposition that "chain of custody" was required only for

items against the Crimes Code, the Court is dubious that no protocol exists governing removal of

items from prison grounds by prison staff, whether those items are contraband per se or the

personal property of prisoners.

Considering the Third Circuit's holding in Monroe that prison officials provided

prisoners with adequate post-deprivation remedies for the confiscation of legal materials after the

realization that inmates were using UCC materials to assist in filing fraudulent liens against state

officials, the Court must contrast treatment by prison officials of Plaintiff's wedding ring with

their treatment of UCC materials. Monroe, 536 F.3d at 203. In affirming the District Court's

grant of summary judgment to defendants in Monroe, the Third Circuit described the creation

and implementation of DOC policy as follows

> in July 2005, DOC management issued a memorandum to all its institutions, declaring as
> "contraband" all UCC forms, documents relating to UCC filings, materials on
> "redemption" and copyrighting names, and publications regarding the "redemption or lien
> filings." Specifically, it established that the possession and receipt of these publications
> violated its policy on inmate mail privilege, DC-ADM 803, which prohibits "[w]ritings
> that advocate, assist or are evidence of criminal activity or facilitate misconduct." The
> memorandum also directed prison officials to investigate inmates believed to be engaged
> in copyrighting their names or filing liens. But it cautioned that the material should not be
> destroyed until inmates had an opportunity to object using an "Unacceptable
> Correspondence Form," indicating that they had an independent, legitimate purpose for
> possessing the items.

Id. at 204. As a result of this policy, SCI Graterford officials began tracking inmates who had

been in receipt of UCC materials and officers engaged in a targeted raid of inmate's cells and

confiscation of UCC and other non-contraband materials. Id.

In Monroe, DOC officials had determined material to be contraband that, as Plaintiff's

ring, were legally obtainable outside of the prison context. However, unlike in the instant case,

DOC officials saw fit to issue a memorandum explicitly "declaring" these materials to be

contraband in light of their association with criminal activity. Defendants have pointed to no

policy making a similar declaration as to a ring fitting the description of Plaintiff's ring. Once

UCC materials were declared contraband, SCI Graterford took affirmative action to ensure that

these materials were eradicated from the prison. Had Plaintiff's ring been similarly been

considered contraband, a jury could legitimately question why prison officials allowed Plaintiff

to keep it with him in his cell for 14 years.  Given treatment of the ring over the years and the lack of conclusive evidence regarding relevant policies, the Court finds that a genuine issue of material fact exists as to whether the ring is contraband.

**B.    Disputes of Fact Exist Precluding the Court from Resolving the Qualified Immunity Question on Summary Judgment**

The Court will now turn to Defendants' contentions regarding qualified immunity, which are also raised in Defendants' Motion for Reconsideration.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In evaluating a defendant's immunity from suit, the Court must ask (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation.  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), abrogated in part by Pearson v. Callahan, 552 U.S. 1279 (2008) ).  It is the defendants' burden to establish that they are entitled to qualified immunity.  Sciotto v. Marple Newton School Dist., 81 F. Supp. 2d 559, 569 (E.D. Pa. 1999).

Defendants assert two grounds for reconsideration of the Court's denial of their qualified immunity claim.  First, Defendants assert that qualified immunity is applicable "because it is not clearly established that an inmate can have a protected property interest in contraband."  Defs.' Mot. for Reconsid. 1.  The Court has answered this issue above, in finding that the record does not justify a conclusion that, as a matter of law, the plaintiff's ring was "contraband."

The second ground asserted for qualified immunity is that "there is no precedent holding that officials may be liable for due process property claim if their actions could be considered as 'sufficiently interfering' with the access to the grievance system and that the test is the same as for determining 'availability' for purposes of the PLRA's exhaustion requirement."  Id.

As to the latter portion of the second ground, Defendants contend in their Brief in support of this Motion for Reconsideration that the Court declared a new rule by relying on cases discussing the availability of an inmate grievance procedure in the context of exhaustion for purpose of the PLRA.  The PLRA precludes a prisoner from bringing an action "with respect to prison conditions under section 1983 of this title . . . by a prisoner confined . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Court notes that, in deciding the issue of qualified immunity as to Plaintiff's due process rights, it did not rely on the PLRA exhaustion cases to announce a new rule of law.  Rather, the Court used those cases to clarify what would constitute a "meaningful" or "adequate" post-deprivation remedy.  While finding those cases to be instructive, the Court has now determined them to be unnecessary in deciding the sufficiency of Plaintiff's evidence in contesting Defendants' Second Motion for Summary Judgment.

Regarding the issue of Defendants' liability for a denial of a post-deprivation remedy to Plaintiff, Defendants also assert "none of the historical facts material to determining the availability of the grievance system are in dispute."  This statement is in derogation of the factual record carefully summarized above.

Very recently, the Supreme Court handed down a decision in Ortiz v. Jordan, No. 09-737,

2011 WL 197801 (January 24, 2011).  Although Ortiz was decided post trial and had a

complicated procedural history not applicable here, in refusing an appeal from the denial of

summary judgment, the Court specifically reaffirmed its prior decisions that cases presenting a

factual dispute about the grounds asserted for qualified immunity preclude a grant of qualified

immunity.  Id. at *7; see also Johnson v. Jones, 515 U.S. 304 (1995).  This is, of course, the

applicable law in the Third Circuit, as cited in this Court's Memorandum of November, 30, 2010

at page 28-29, and repeated in the recent case of Kelly v. Borough of Carlisle, 622 F.3d 248 (3rd

Cir. 2010).

     In this case, there are considerable factual disputes that impact the issue of qualified

immunity.  To start, a question exists as to the cause for the reversal by prison officials, including

Defendants, of a 14-year practice of allowing Plaintiff to keep his ring in his cell, whether or not

the ring was Plaintiff's "wedding band" and whether or not the ring was valuable or a mere

trinket.  As noted in the discussion above, the contraband question remains relevant to whether

Plaintiff has due process rights associated with his ring.

     This Court finds that factual disputes exist, as well, implicating the question of whether

Plaintiff received a meaningful post-deprivation remedy.  It is clearly established that the

deprivation of a prisoner's property by a state official does not violate procedural due process

requirements as long as "a meaningful post-deprivation remedy for the loss is available."

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) (citing Hudson v. Palmer, 468 U.S. 517, 533

(1984) (holding that intentional destruction of property is not violative of due process where

prisoner is provided with post-deprivation remedy); see also Parratt v. Taylor, 451 U.S. 527

(1981) (holding that negligent destruction of "hobby materials" not violative if prisoner is given post-deprivation remedy). The general rule is that due process requires an "opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" Parratt, 451 U.S. at 540 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

The issue of whether Defendants denied Plaintiff's right to a meaningful post-deprivation remedy is a question of law. See e.g. In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 278 F.3d 175, 180 (3d Cir. 2002) ("Issues pertaining to the adequacy of [a plaintiff's] 'opportunity to be heard,' are questions of law subject to plenary review.") (quoting In Re Tutu Wells Contamination Litig., 120 F.3d 368, 383 (3d Cir.1997)); Cozzo v. Tangipahoa Parish Council--President Government, 279 F.3d 273, 290 (5th Cir. 2002) (The district court's application of the Parratt/Hudson doctrine presents a question of law[.]"). The question of whether "it would be clear to a reasonable officer that [Defendants'] conduct was unlawful in the situation [they] confronted," Reedy v. Evanson, 615 F.3d 197, 224 (3d Cir. 2010), is similarly a question of law. Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007). However, the "qualified immunity defenses asserted by [Defendants] do not present 'neat abstract issues of law.'" Ortiz, 2011 WL 197801, at *10 (quoting Johnson, 515 U.S. at 317). Rather, the Court finds that a decision on this matter depends first on resolution of factual disputes.

After the ring was confiscated, a hearing on Plaintiff's misconduct charge was held, at which Hearing Officer Canino clearly informed Plaintiff that his ring could be sent home. Pl.'s Dep. at 58:8 to 59:10; Canino Dep. at 71:10-24. That decision was reinforced repeatedly to Plaintiff through representations by Radle and Dohman, both in writing and verbally. Pl.'s Ex. C

at D-4, p.3; Pl.'s Ex. C at D10, p. 19, 22.  At this point, the ring, then in the custody of the DOC, mysteriously disappeared.  See e.g. Radle Dep. at 18:17-19:14.  Once the ring was lost, Radle expressed to Plaintiff that he could receive a remedy for its loss upon providing proof of valuation.  Pl.'s Dep. at 68:12-21; Radle Dep. at 18:17-19:14; Pl.'s Ex. C at D5, p. 3; Radle Dep. at 35; Pl.'s Ex. C at P20.

A ring was subsequently found, which Defendants assert was Plaintiff's ring, an assertion which Plaintiff refutes, claiming that the ring is still lost.  Pl.'s Suppl. Counterst. of Facts ¶ 109. Defendants have since conceded for the purpose of their second summary judgment motion that the ring remains lost.  Transcript of August 11, 2010 hearing, pp. 8:4-12; 10:7-21.  If the ring is lost, a question of fact exists as to how Dohman was able to take the ring to an offsite jeweler for an appraisal and why the appraisal provided by Dohman diverges so radically from that provided by Plaintiff to Defendants.  Dohman Dep. 44:15-49:19, 101:4-105:24; Pl.'s Ex. B at P13; Dohman Dep. at 50:8-13; Pl.'s Ex. C at D10, pp. 5-6.  Defendants do not explain this contradiction, but only suggest that Plaintiff was not truthful either (1) in asserting Defendants substituted a different ring for Plaintiff's ring and took the substituted ring to a jeweler or (2)  in asserting that the appraisal Plaintiff submitted is a true valuation of his wedding ring.  Defs.' Reply to Pl.'s Suppl. Counterst. of Facts ¶ 109; Pl.'s Dep. at 119:12-121:22; Pl.'s Ex. C at D11, pp. 1-3.

This is not a case in which Plaintiff unsuccessfully pursued a grievance procedure only to be informed that he was neither entitled to keep the ring in his cell and nor entitled to have the ring sent home.  See e.g. Woods v. Abrams, No. Civ. A. 06-757, 2007 WL 2852525, at *19

(W.D. Pa. Sept. 27, 2007) (Fischer, Magistrate J.) ("The fact that [t]he prisoner was not successful in his grievance pursuit does not undermine the procedure's adequacy as a post-deprivation remedy."); <u>Austin v. Lehman,</u> 893 F. Supp. 448, 454 n. 4 (E.D. Pa. 1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.") (Brody, J.). Plaintiff did in fact file grievances, first for the confiscation, then the loss, of the ring. In doing so, Plaintiff never received a negative ruling, but was, instead, redirected towards another process for redress altogether.

The decision that Plaintiff could send his ring home was never effectuated, and not, according to the record of this case, because of any fault of Plaintiff. If Defendants are correct in asserting that the ring is still in DOC custody, the question remains why Defendants never followed through on the decision by Hearing Officer Canino that Plaintiff's ring could be sent home. If Plaintiff's ring is still missing, then an additional factual issue remains as to why Defendants did not provide Plaintiff with redress once he complied with Radle's directive to provide a proof of value. Without resolution of these factual issues, the Court cannot reach the legal question as to whether Plaintiff received any post-deprivation process much less whether it was meaningful.

This Court is aware that in some instances a private tort remedy is an adequate post deprivation remedy, i.e., Plaintiff could institute a common law tort suit in state court against the prison guards for taking his property. <u>See</u> Parratt, 451 U.S. at 541-42; Hudson, 468 U.S. at 531-536. The Third Circuit has summarily dismissed prison due process claims where plaintiffs have both state tort suits for conversion of property and prison grievance procedures available to

them.  <u>Tapp v. Proto</u>, No. 10-3059, 2010 WL 5095832, at *3  (3d Cir. Dec. 3, 2010) (finding

available tort claim, in addition to prison grievance procedure, provided sufficient

post-deprivation process); <u>Mattis v. Dohman</u>, 260 Fed. App'x 458, 461 (3d Cir. 2008) (same);

<u>Alexander v. Gennarini</u>, 144 Fed. App'x 924, 925  (3d Cir. 2005) (citing <u>Hudson</u>, 468 U.S. at

535) (same).  The Court finds that this is not a realistic remedy in this case.  In the first place, the

ring which Plaintiff asserts is his ring has been lost through no fault of Plaintiff.  Without the

ring, which Plaintiff acknowledges as <u>his</u> ring, in evidence, and to be subject to an appraisal and

shown to a jury in a tort law suit, plaintiff is severely handicapped.  Therefore, such a tort remedy

is clearly not a reasonably available alternative in this situation.

This opinion, and the foregoing opinions have detailed many disputed facts that need to

be the subject of a trial and therefore this Court has satisfied the Third Circuit's requirement that

a district court specify material facts that are subject to dispute.  <u>See</u> <u>Forbes v. Township of

Lower Merion</u>, 313 F.3rd 144  (3d Cir. 2002).

## V.    Conclusion

For the aforementioned reasons, the Court denies Defendants' Motion for

Reconsideration.


O:\CIVIL 07-08\07-2686 Miller v. Digugliemo\Miller v. DiGuglielmo 07-2686 SECOND Motion for Reconsid.wpd